UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

BAYOU CITY EXPLORATION, INC.,                                                                Plaintiff,

v.                                                                Civil Action No. 1:14-cv-99-DJH-HBB

CONSUMER ADVOCATE SERVICES
ENTERPRISES, LLC and JAMES
CHAMBLISS,                                                                Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Consumer Advocate Services Enterprises, LLC (CASE) and James Chambliss have moved to dismiss this case on the grounds that the Court lacks personal jurisdiction over them and that venue is improper in this judicial district.  (Docket No. 11)  Because Plaintiff Bayou City Exploration, Inc. (Bayou City) has not made a prima facie showing of personal jurisdiction as to either defendant, the motion to dismiss will be granted.

**I.     BACKGROUND**

This case involves telephone calls allegedly made by the defendants to individuals who had invested in Bayou City, a Kentucky company "engaged in the business of preparing oil and gas drilling programs and selling offerings through a broker/dealer."  (D.N. 1 at PageID # 2 ¶ 8)  As set forth in the complaint, CASE—through Chambliss and other agents—contacted investors and informed them that if they had invested in Bayou City or certain other entities, they had been defrauded.  (*Id.* at PageID # 3 ¶ 10)  The callers then "requested an upfront retainer payment in exchange for [CASE's] assistance in attempting to recoup investment funds."  (*Id.* ¶ 12)

The complaint describes three such calls: one to Mari Jo Coles, one to Ronald W. Hoettels, and one to Ernest Val Mathews.  (*See id.* at PageID # 3-5 ¶¶ 10-27)  Affidavits from

Hoettels and Mathews were attached to the complaint. According to Hoettels's affidavit, he is a Wisconsin resident; Mathews states that he is a resident of New Jersey. (D.N. 1-1, 1-2) Coles's state of residence was not mentioned in the complaint, nor was an affidavit by Coles attached. However, the complaint states that the case "aris[es] out of Defendants' telephone, U.S. mail, and e-mail solicitation to current and former business clients of Plaintiff, including, but not limited to residents of Kentucky, purporting to recover investment funds under false and misleading pretenses, which tortious conduct has caused injury to the Plaintiff in the Commonwealth of Kentucky." (D.N. 1 at PageID # 2 ¶ 4) In addition, Bayou City alleged that

> this Court has personal jurisdiction over the Defendants herein and venue is appropriate by virtue of Defendants having transacted business within the Commonwealth of Kentucky, having caused tortious injury in the Commonwealth of Kentucky, having engaged in telephone solicitation in the Commonwealth of Kentucky, and further, pursuant to KRS 454.210.

(*Id.* ¶ 6) The complaint contains no other mention of Kentucky except to identify Bayou City as a corporation registered to do business in Kentucky with its principal place of business in Kentucky. (*Id.* at PageID # 1 ¶ 1)

CASE and Chambliss, both of whom are California residents, moved for dismissal under Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure. They argued that they have insufficient contacts with Kentucky to provide the Court with personal jurisdiction and that venue is improper here because the alleged misconduct occurred in California. (*See* D.N. 11) In response, Bayou City acknowledged that personal jurisdiction and venue were not apparent from the face of the complaint. (D.N. 12 at PageID # 45) To remedy this deficiency, Bayou City provided affidavits from Mari Jo Coles (now Mari Jo Larkin), who identifies herself as a

Kentucky resident, and Kevin Cline, who also states that he is a resident of Kentucky.[1] (D.N. 12-1, 12-2)

The Coles affidavit merely incorporates paragraphs 14-21 of the complaint (concerning the call she received), provides Coles's (Kentucky) address and cell phone number, and states that Coles was contacted at that number by Chambliss "in or around July 2014."[2] (D.N. 12-1 at PageID # 53) Cline's affidavit contains more detail, describing three calls Cline received from CASE representatives beginning on August 29, 2014. (D.N. 12-2 at PageID # 55) Cline avers that during the August 29 call, the caller, Walt Price, asked him if he "had made investments in oil and gas," and when Cline said that he had (without identifying Bayou City), Price immediately "stated that [Cline] ha[d] likely been defrauded and that he could help [Cline] get [his] money back." Cline told Price that he "would speak with him at another time." Since then, Cline asserts, Price has "called [him] virtually every day leaving multiple voice mail messages." (*Id.*) In a second conversation with Price on October 2, 2014, Cline confirmed that he had made investments with Bayou City and a similar company, Blue Ridge. Price replied that the two companies were one and the same "and that they are the 'poster boy' for oil and gas fraud." (*Id.*) Cline recalls receiving another call "[s]hortly thereafter . . . from the same number from a different person who did not provide a name" and who "abruptly hung up" when Cline gave his name. (*Id.*)

In their reply, CASE and Chambliss assert that Coles and Cline "are not innocent investors that were solicited by" CASE. (D.N. 13 at PageID # 59-60) Rather, the defendants

---

[1] In the interest of clarity, the Court will refer to Coles as she is identified in the complaint.
[2] According to the defendants, there is no record of this call in CASE's call logs, and Chambliss denies any recollection of it. (*See* D.N. 13 at PageID # 60; D.N. 13-1) For purposes of the present motion, however, the Court must disregard factual assertions that conflict with Bayou City's allegations. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002).

3

contend, Cline is the owner of Bayou City, and Coles is married to the company's president and CFO, Stephen Carl Larkin. (*Id.* at PageID # 60) Attached to the reply are several documents—including SEC records and a marriage certificate for Coles and Larkin—supporting the defendants' assertions.[3] (*See* D.N. 13-3, 13-4) As Bayou City did not challenge the defendants' characterization of Coles and Cline, the Court assumes its truth for purposes of the following analysis.

## II. ANALYSIS

The burden is on Bayou City to show that personal jurisdiction exists as to each defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). To make this showing, a plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts" demonstrating the Court's jurisdiction. *Id.* When presented with a motion to dismiss under Rule 12(b)(2), the Court has three options: (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

Bayou City has not requested jurisdictional discovery in this case. Nor does the Court find that there are factual disputes necessitating an evidentiary hearing. Consequently, Bayou City's burden is relatively light: "Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Id.* The Court must view the pleadings and affidavits in the light most favorable to Bayou City, without "weigh[ing] the controverting assertions" of the

---

[3] The marriage certificate shows that Coles and Larkin were married on January 3, 2013—several months before Coles allegedly received a call from Chambliss. (*See* D.N. 13-4 at PageID # 89)

4

defendants. *Id.* at 1459. Dismissal is proper only "if all of the specific facts . . . alleged" by Bayou City "collectively fail[] to state a prima facie case for jurisdiction." *Id.*

Because this is a diversity action, the Court applies Kentucky law to determine whether it has personal jurisdiction over CASE and Chambliss. *See id.* While the parties acknowledge this rule in their briefs, both sides rely on case law preceding *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), in which the Kentucky Supreme Court held that the jurisdiction conferred by Kentucky's long-arm statute, Kentucky Revised Statutes § 454.210, is not coextensive with the limits of federal due process. *See id.* at 56-57. As a result, neither side's brief adequately addresses whether jurisdiction is proper under Kentucky law. The Court, however, will undertake the two-part analysis set forth in *Caesars*, first looking to § 454.210 to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories," and if so, applying the traditional test "to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.* at 57.

### A. Kentucky Revised Statutes § 454.210

Kentucky's long-arm statute provides, in relevant part:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth,

5

>provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth; [or]
>
>. . .
>
>9. Making a telephone solicitation, as defined in KRS 367.46951, into the Commonwealth.

Ky. Rev. Stat. § 454.210(2)(a). For purposes of the statute, the term "person" includes nonresident commercial entities. § 454.210(1).

In its complaint, Bayou City asserts three grounds upon which the Court may exercise personal jurisdiction over CASE and Chambliss: their "having transacted business within the Commonwealth of Kentucky, having caused tortious injury in the Commonwealth of Kentucky, [and] having engaged in telephone solicitation in the Commonwealth of Kentucky." (D.N. 1 at PageID # 2 ¶ 6) Thus, the case implicates subsections (1), (3) or (4), and (9) of the long-arm statute.

    1.     "Transacting any business"

Bayou City does not explain how the defendants' alleged phone calls to Kentucky residents constitute the transaction of business in Kentucky. The term "transact"—defined as "[t]o carry on or conduct (negotiations, business, etc.) to a conclusion"—connotes more than mere solicitation in this context. *Black's Law Dictionary* 1726 (10th ed. 2014); *see Perkins v. Bennett*, No. 3:13-CV-695, 2013 U.S. Dist. LEXIS 160833, at *15-17 (W.D. Ky. Nov. 12, 2013) (rejecting plaintiff's argument that defendants "transacted business in Kentucky by contacting him for the purpose of soliciting funds from him"). The fact that a separate subsection of the long-arm statute specifically addresses telephone solicitations leaves the Court with little doubt that in making the calls, the defendants were not transacting business within the meaning of the statute. *See* Ky. Rev. Stat. § 454.210(2)(a)(9); *Ford Motor Co. v. United States*, 768 F.3d 580,

587 (6th Cir. 2014) (instructing that statutory provisions should not be read in a manner that renders other provisions superfluous).

Neither Coles nor Cline claims to have negotiated with CASE or engaged CASE's services after receiving the calls. (*See* D.N. 12-1, 12-2) Moreover, the supplemental affidavit of CASE President Michael DeMarco, Jr., attached to the defendants' reply and dated October 24, 2014, avers that CASE has had no clients from Kentucky in the past sixteen months. (D.N. 13-3 at PageID # 73) Likewise, Chambliss states in his affidavit that he "ha[s] not done business in the state of Kentucky since 1991." (D.N. 11-2 at PageID # 42) Based on the language of the statute and the evidence presented, the Court cannot find that Bayou City's claims arise from either defendant's transacting business in Kentucky.

### 2. "Causing tortious injury"

Bayou City maintains that the Court may exercise personal jurisdiction over the defendants because their actions "caus[ed] financial harm to a Kentucky company." (D.N. 12 at PageID # 51) Subsections (3) and (4) of the long-arm statute apply to situations where the plaintiff's injury occurred in Kentucky. The primary distinction is that subsection (3) applies if both the causal act and the injury occurred in Kentucky, while subsection (4) contemplates a tortious act committed outside Kentucky. *Perkins*, 2013 U.S. Dist. LEXIS 160833, at *19-20 (citing *Pierce v. Serafin*, 787 S.W.2d 705, 706 (Ky. Ct. App. 1990)). Here, the alleged wrongdoing consists of telephone calls made to Kentucky residents by defendants located in California. Phone calls made from another state do not constitute "act[s] . . . in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(3); *Perkins*, 2013 U.S. Dist. LEXIS 160833, at *19-20. As there is no allegation that either defendant committed any act within Kentucky, subsection (3) does not apply in this case.

7

Subsection (4) is likewise inapplicable. Bayou City has not shown that CASE or Chambliss "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in" Kentucky. Ky. Rev. Stat. § 454.210(4). At best, it cites the calls to Coles and Cline and vaguely declares that it "has reason to believe that Defendants have targeted other residents of Kentucky."[4] (*Id.* at PageID # 51) This bare assertion in a brief is not enough to rebut the defendants' evidence that CASE had no Kentucky clients from June 2013 until at least October 2014. (D.N. 13-3 at PageID # 73) Bayou City has not presented specific facts supporting the Court's exercise of personal jurisdiction under subsection (4). *See Theunissen*, 935 F.2d at 1458.

### 3. "Making a telephone solicitation"

Though not cited by Bayou City or the defendants, subsection (9) of the long-arm statute—which contemplates jurisdiction over a defendant who makes a telephone solicitation into Kentucky—appears most relevant to this case. The statutory definition of "telephone solicitation" includes "[a] live or recorded communication sent by a telephone . . . to a residential, mobile, or telephone paging device telephone number . . . [s]oliciting a sale of consumer goods or services, [or] offering an investment, business, or employment opportunity." Ky. Rev. Stat. § 367.46951(1)(a). The calls to Coles and Cline fit this definition.

The calls to Cline, however, fall within an exception. The term "telephone solicitation" does not include "[a] telephone call made in response to an express request of a person called, unless the request was made during a prior telephone solicitation." § 367.46951(2)(a). This exception applies to the calls Cline received because the defendants have presented proof that Cline initiated contact with CASE.

---

[4] Although Bayou City suggests that discovery might reveal evidence of such contact, it does not request discovery. (*See* D.N. 12 at PageID # 51)

8

Cline states in his affidavit that he "received a call on [his] cell phone" from Price on August 29, 2014. (D.N. 12-2 at PageID # 55) In fact, according to Price, that call was Price's response to a call Cline had made to him two weeks earlier. (D.N. 13-2 at PageID # 2) As set forth in Price's affidavit, Cline called him on August 14, 2014, and "asked if [CASE] could help him get his money back from Bayou City Exploration, Inc." (*Id.*) Price replied that he "would look into it and give [Cline] a call back." (*Id.*) Attached to Price's affidavit are phone records showing an August 14, 2014 call from a phone number with a Bowling Green, Kentucky area code, as well as results from a reverse-lookup search indicating that the phone number belongs to Kevin Cline. (*See id.* at PageID # 69, 71) In light of this uncontroverted evidence that Price's calls to Cline were prompted by Cline's request for information about CASE and what the company could do for him, the Court finds that the calls Cline received were not telephone solicitations within the meaning of the Kentucky long-arm statute.[5] *See* Ky. Rev. Stat. § 367.46951(2)(a); *Newberry v. Silverman*, No. 14-3882, 2015 U.S. App. LEXIS 8904, at *11 (6th Cir. May 29, 2015) (noting that "[t]he Kentucky legislature . . . has been very precise in defining what constitutes a 'telephone solicitation'" and finding that defendant's calls did not constitute phone solicitations because plaintiff's affidavit "establishe[d] both that he had a preexisting relationship with [the defendant] and that [the plaintiff] was the one who initiated contact").

---

[5] Price's version of events does not conflict with the facts asserted by Bayou City, as Cline did not assert that the August 29 call from Price was his first contact with CASE or that the call was unsolicited. Indeed, Cline's affidavit alludes to his awareness of prior calls to other investors, noting that he was "shocked" CASE would contact him "since [his] name ha[d] been prominent in the stories that ha[d] been told to various clients of Bayou City." (D.N. 12-2 at PageID # 55) Presumably, if Bayou City disputed the facts asserted in Price's affidavit, it would have sought leave to file a sur-reply addressing them.

This leaves only the call from Chambliss to Coles as an act potentially giving rise to personal jurisdiction. The Court thus must determine whether each of Bayou City's claims arises from that call such that the exercise of jurisdiction over Chambliss and CASE is proper. *See* § 454.210(2); *Caesars*, 336 S.W.3d at 57. In *Caesars*, the Kentucky Supreme Court interpreted the "arising from" requirement in § 454.210 to mean that "the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction." 336 S.W.3d at 58-59. In other words, "the statutory foundation for the assertion of long-arm jurisdiction must be the source of the plaintiff's cause of action." *Id.* at 59. There must be "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Id.*

Here, Bayou City alleges that the defendants made false and defamatory statements to Coles—a Bayou City investor and Kentucky resident—about the company. (D.N. 1 at PageID # 3-5 ¶¶ 14-21) It also alleges generally that the defendants' false statements to its investors harmed its reputation and relationships with those investors. (*See id.* at PageID # 6-7) Notably, it does not allege, nor does Coles's affidavit state, that the call Coles received from Chambliss affected her relationship with Bayou City in any way. (*Cf. id.* at PageID # 5 ¶ 24 ("Although investor Hoettels declined Defendants['] offer of representation, the false allegations resulted in investor Hoettels canceling his check for his most recent investment with [Bayou City].")) Nevertheless, taking the pleadings in the light most favorable to Bayou City, the Court concludes that Bayou City's claims arise out of the call from Chambliss to Coles (among other calls). The Court cannot find that the exercise of jurisdiction over CASE and Chambliss would comport with due process based on that call, however.

B.     Due Process

To make a prima facie showing at the due process stage of the analysis, Bayou City must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [CASE and Chambliss] would not offend 'traditional notions of fair play and substantial justice.'"[6]  *Neogen*, 282 F.3d at 889 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  As Bayou City has not attempted to establish general jurisdiction in this case, the Court's analysis will be limited to determining whether specific jurisdiction exists.[7]

The Supreme Court recently emphasized that the specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1122 (internal quotation marks omitted).  To satisfy due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*  Thus, contacts between the plaintiff and the forum state, *id.*, or between the defendant and persons who live there, *id.* at 1122-23, are not determinative.

In the intentional-tort context, personal jurisdiction "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 1123.  The fact that the plaintiff's injury was felt in the forum state is not dispositive; rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 1125.  Thus, "[t]he proper question is not where the plaintiff experienced a

---

[6] The Court notes that personal jurisdiction must be established as to each defendant individually. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980). The sole Kentucky contact at issue here is the call from Chambliss to Coles, which implicates both defendants.

[7] Specific jurisdiction is based on a connection "between the forum and the underlying controversy," whereas general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Walden v. Fiore*, 134 S. Ct. 1115, 1120 n.6 (2014).

11

particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

The Sixth Circuit applies a three-part test to determine whether a court's exercise of specific jurisdiction would be consistent with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see, e.g.*, *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014) (applying *Mohasco* test). In this case, the Court need not go beyond the first prong.

Telephone calls or other communications purposefully directed into the forum state may satisfy the purposeful-availment prong of the *Mohasco* test if the communications cause injury within the forum and "form the 'heart' of the cause of action." *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001); *see id.* at 332 ("When the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment."). But the call to Coles does not "form the 'heart'" of Bayou City's claims, nor is there any evidence that it caused injury in Kentucky. *Neal*, 270 F.3d at 333. In a nutshell, Bayou City alleges that the defendants hurt its reputation and relationships with its investors by giving investors false information about the company. (*See* D.N. 1 at PageID # 2 ¶ 4) As noted above, however, Bayou City has not alleged or even argued that the call Coles received disrupted her relationship with Bayou City. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995) (breach of contract and resulting damages are essential elements of claim for intentional interference with contractual relations; "[a]t a minimum," a plaintiff who asserts this

12

cause of action "must show that a contract existed between it and a third party followed by a breach by the third party"). This is unsurprising, given that she is—and was at the time of the call—married to Bayou City's president and CFO; it is not likely that her interest in the company would be altered by a phone call from an unknown person in California purporting to advise her that, for example, her husband had been "subjected to discipline as the result of a FINRA case." (D.N. 1 at PageID # 4 ¶ 18) Nor could Bayou City credibly contend that its defamation claim rests on statements about the company made to the wife of the company's president.[8] *See Stringer v. Wal-Mart, Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004) (to be actionable, defamatory language must be published, i.e., it must be "intentionally or negligently communicated to someone other than the party defamed").

Furthermore, a single phone solicitation to a Kentucky resident, with no apparent consequences, does not "create a substantial connection with" Kentucky. *Walden*, 134 S. Ct. at 1121. Although it insists that the defendants "specifically targeted" Kentucky residents, Bayou City itself points out that the alleged misconduct was not focused on a particular state; indeed, it describes the defendants' actions as essentially random, asserting: "C.A.S.E. and its employees/agents troll for clients via telephone cold calls without regard to the target's physical location. The Defendants totally ignore state lines in the execution of their business model."[9] (D.N. 12 at PageID # 50) The complaint likewise indicates that Coles was simply the next name on a list of investors scattered across the country, including Hoettels in Wisconsin and Mathews in New Jersey. (D.N. 1 at PageID # 5; *see* D.N. 1-1, 1-2) Again, due process requires not just "that there be some connection between the in-state activity and the cause of action—th[e]

---

[8] For the same reasons, the call to Cline would not support personal jurisdiction over CASE: making false statements about the company to the company's owner presumably could not harm the company (and Bayou City has not shown that it did).

[9] The Court expresses no opinion regarding the nature of the defendants' operations.

connection must be *substantial*." *Cmty. Trust Bancorp, Inc. v. Cmty. Trust Fin. Corp.*, 692 F.3d 469, 472-73 (6th Cir. 2012); *see Walden*, 134 S. Ct. at 1121. That standard is not met here.

### III. CONCLUSION

Bayou City has failed to present specific facts supporting the exercise of personal jurisdiction over CASE and Chambliss in this case. Because personal jurisdiction is lacking, the Court need not address the defendants' venue challenge. Accordingly, it is hereby

**ORDERED** that the Motion of Defendants to Dismiss Action (D.N. 11) is **GRANTED**. This action is **DISMISSED** without prejudice and **STRICKEN** from the Court's docket.

July 6, 2015

**David J. Hale, Judge
United States District Court**